# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TEREANCE D., through his Guardian and next friend, WANDA D., and WANDA D. in her own right,<br>　Plaintiffs,<br><br>　　v.<br><br>SCHOOL DISTRICT OF PHILADELPHIA,<br>　Defendant. | : : : : : : : : : : | CIVIL ACTION<br><br>NO. 07-4166 |

## Memorandum and Order

YOHN, J.                                                                                                                February ____, 2008

Plaintiffs Tereance D. and Wanda D. bring this five-count action against the School District of Philadelphia (the "District") for failing to provide Tereance with a free appropriate public education ("FAPE") and for discriminating against Tereance. The court presently considers the District's motion to dismiss Counts III and IV under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted and its motion to dismiss Wanda as a plaintiff in her own right.

**I.      Factual and Procedural History[1]**

Tereance has autistic spectrum disorders and related disabilities. (Compl. ¶ 2.) Autistic spectrum disorders are neurological impairments that impact a student's ability to acquire

---

[1] Because this is a motion to dismiss, the court accepts the facts that plaintiff alleges in the Complaint as true. *See Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) (when ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court "must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom" (citation omitted)).

language skills, such as articulate speech, and relate to others. (*Id.* at ¶ 44.) During early intervention schooling, which is unrelated to the District's services, Dr. Susan Huntington, a District psychologist, evaluated Tereance but failed to comprehensively assess whether Tereance was autistic, instead erroneously concluding that Tereance was mentally retarded. (*Id.* at ¶¶ 42-46.) Although Dr. Huntington misclassified Tereance's condition, she expressly stated that he required learning support in order to receive a FAPE. (*Id.* at ¶ 49.) Tereance transitioned from early intervention to kindergarten in the District at the start of the 2000-2001 school year. (*Id.* at ¶ 2.)

    A.    **Tereance's Schooling**

        1.    **School-Year Support**

Every disabled student who requires individualized instruction is eligible to receive a FAPE. *See* 34 C.F.R. § 300.26(b)(3). It is incumbent on the district to evaluate the student's disability and need for a FAPE. *See* 34 C.F.R. §§ 104.35, 300.125, 300.532(b). When Tereance entered kindergarten in 2000, his readiness skills were at the level of a two-and-a-half year old child, with delays of twenty-five percent or greater in speech and language, cognitive, social and emotional, fine and gross motor, and self-help skills. (*Id.* at ¶ 41.) The District, however, placed him in a regular kindergarten program without supplemental supports. (*Id.* at ¶ 47.)

From kindergarten through fifth grade, the District conduct a series of flawed evaluations of Tereance and at times failed to conduct evaluations at all. (*E.g.*, *id.* at ¶¶ 56, 62-63, 66, 91-93,115-116, 128.) In an attempt to deal with the behavioral manifestations of Tereance's autistic spectrum disorders, the District provided varying levels of support, such as emotional and full-time learning support, self-contained learning support classrooms, once-a-week speech and

language services, therapeutic support services, removal from instructional areas, and placement in a contractor-run mental health services program,[2] all of which were premised on the misdiagnosis of Tereance's condition as an emotional problem, not autistic spectrum disorders. (*Id.* at ¶¶ 52-55, 73, 92, 96-98, 107, 109).[3] None of these efforts helped Tereance's educational development. (*Id.* at ¶¶ 75, 83-86, 99, 104-106, 108, 113, 114, 117, 126.) Each year, from first through fifth grade, Tereance entered school significantly behind his peers in language, social, behavioral, and other skills. (*Id.* at ¶¶ 58-59, 82-83, 95, 112-113.)

As early as November 2001, the District suspected that Tereance was autistic. At that time, Dr. Huntington performed an evaluation, although she was not competent to conduct an evaluation on an autistic child. (*Id.* at ¶ 62-63.) Her evaluation concluded that Tereance had autistic spectrum disorders and recommended an additional occupational therapy ("OT") evaluation. (*Id.* at 68.) Nonetheless, the District did not properly assess his pragmatic speech development or behavioral issues, and the resulting evaluation report erroneously stated that he had receptive language skills and could use well-informed speech. (*Id.*) The District did not

---

[2] In fourth grade, the District transferred Tereance to Community Council, a District contractor that provided mental health services for emotional support programs (Compl. ¶¶ 109-111.) However, the District failed to ensure that Community Council provided Tereance with a special education classroom or a certified teacher. (*Id.* ¶¶ 120-122.)

[3] For example, in April 2002, while Tereance was in second grade, his negative behaviors escalated, and he had to be hospitalized. (*Id.* at ¶ 76.) Wanda then requested a due process hearing to address Tereance's education. (*Id.* at ¶ 77.) At a prehearing conference on May 22, 2002, the district assured Wanda that it would resolve Tereance's educational needs by incorporating the recommendations of Tereance's medical assistance providers in a full-time emotional support classroom. (*Id.* at ¶ 78.) The District did not consider autistic support services or inform Wanda of Tereance's need for and the availability of autistic support services. (*Id.* at ¶ 79; *see also id.* at ¶ 93.) Without that information, Wanda consented to the emotional support classroom. (*Id.* at ¶ 80.)

inform Wanda that the evaluation was not comprehensive enough to satisfy statutory requirements and misinformed Wanda that it was not possible to fully test Tereance because he refused contact with the evaluator. (*Id.* at ¶¶ 66-67). Furthermore, the District did not follow up on the evaluation's recommendation that Tereance have an OT evaluation and did not refer Tereance for a neuro-psychological evaluation. (*Id.* at ¶ 70.) Instead, without informing Wanda that the District was responsible for identifying Tereance's educational needs, it told her to seek a private psychiatric evaluation to better determine his educational needs. (*Id.* at ¶¶ 71-72.) Again, at this time, and on numerous occasions in the following years, the District did not consider whether Tereance needed autistic support services and did not inform Wanda of Tereance's need for and the availability of autistic support services. (*Id.* at ¶¶ 74, 79, 93.)

On September 27, 2002, the District acted on Dr. Huntington's earlier recommendation that Tereance have an OT evaluation. (*Id.* at ¶ 90.) The District's occupational therapist performed a cursory evaluation and failed to assess Tereance's needs in the sensory area, concluding that he was functioning adequately without the need for OT services. (*Id.* at ¶ 91.) However, in November 2004, a subsequent District evaluation correctly identified that Tereance's behavioral problems were "internally driven by his PDD condition," which is an autistic spectrum disorder. (*Id.* at ¶ 129-30)

Despite this conclusion, the District failed to address Tereance's OT and autistic needs through May 2005. (*Id.* at ¶ 128.) In December 2004, after Wanda had Tereance independently evaluated by the Center for Autistic Children, Wanda requested that the District provide Tereance with autistic support services. (*Id.* at ¶ 132.) For the next five months, the District refused to provide Tereance with these services, declaring him ineligible and falsely telling

4

Wanda that the District did not have an autistic support classroom and did not have to create one for him. (*Id.* at ¶ 133.) The District further claimed that it would be illegal to place him in a restrictive classroom required for autistic support services. (*Id.* at ¶ 135.)

In April 2005, Wanda, now acting with legal representation, requested a prehearing conference to address the District's failure to provide Tereance with autistic support services. (*Id.* at ¶ 137.) At the prehearing conference on May 9, 2005, the District agreed to provide autistic support services to Tereance beginning in September 2005 at the Nebinger Elementary School. (*Id.* at 138). Nebinger Elementary School had provided autistic support services to District students for seventeen years. (*Id.* at ¶ 139.) As part of Tereance's autistic spectrum disorders individual education program ("IEP"), the District also agreed to provide OT services for handwriting and sensory integration and direct instruction in pragmatic language. (*Id.* at ¶ 140.)

### 2. Extended School Year Services

Extended school year services ("ESY") are special education and related services operated by the District beyond the normal school year if necessary to provide a student with a FAPE. *See* 34 C.F.R. § 300.309(a)(2). Whether a child qualifies for ESY must be raised at every IEP team meeting. *See* 22 Pa. Cons. Stat. § 711.44(6). From kindergarten through fifth grade, the District held numerous periodic IEP meetings regarding Tereance without providing Wanda with notice that ESY would be considered and without considering the required eligibility factors when denying Tereance ESY eligibility. (*Id.* at ¶¶ 50-51, 54-55, 60, 65, 88-89, 100-02.)

Tereance did not receive ESY between the end of kindergarten in 2001 and the beginning of fourth grade in 2004. (*Id.* at ¶¶ 57, 81, 111.)[4]

On December 1, 2005, the District held an IEP meeting and determined that Tereance was eligible for ESY. (*Id.* at ¶ 147.) However, in Spring 2006, Tereance's teacher, who was not qualified to make such determinations, informed Wanda that the available ESY services were inappropriate for Tereance. (*Id.* at ¶ 148.) Relying on that information, Wanda waived Tereance's ESY, which she would not have otherwise done. (*Id.* at ¶¶ 148-151.) Additionally, the District's policies and procedures regarding ESY services did not comport with state or federal law and were designed to mislead parents as to their ESY rights. (*Id.* at ¶ 150.)

### B. Administrative Proceedings

On December 13, 2006, Wanda filed a due process complaint pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 *et seq.*, and section 504 of the Rehabilitation Act of 1973 ("section 504"), 29 U.S.C. § 794 *et seq.* A hearing officer reviewed the case over six sessions before issuing an order on June 8, 2007 granting compensatory education for the period between December 13, 2004 and May 9, 2005 and compensatory ESY for the summers of 2002, 2003, 2004, and 2006. The hearing officer denied compensatory education for the school years of 2001-2002, 2002-2003, and 2003-2004, concluding that the statute of limitations had expired on those claims. The hearing officer also denied compensatory education for September through December 2004 and compensatory ESY for the summer of

---

[4] ESY for the summer of 2005 is not at issue in this case, although it is not clear from the Complaint or briefs whether this is because Tereance received ESY in 2005 or for some other reason.

2005. On July 17, 2007, the Special Education Appeals Panel's (the "panel") affirmed the hearing officer's order.

### C.     Procedural History

On October 15, 2007, Tereance and Wanda filed this five-count Complaint against the District. Count I seeks enforcement of the hearing officer's award of compensatory education and ESY under IDEA. Count II appeals the panel's determination that the statue of limitations applied to preclude recovery for a violation of a FAPE under IDEA. Count III alleges discrimination based on Tereance's disabilities in violation of section 504 and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Count IV alleges a 42 U.S.C. § 1983 claim for intentional discrimination against Tereance in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Count V alleges a failure to reimburse plaintiffs for their attorney fees and costs under IDEA, section 504, and 42 U.S.C. § 1988.

On December 20, 2007, the District moved to dismiss Counts I, III, and IV under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The District also moved to dismiss Wanda D. as a plaintiff in her own right. In response, plaintiffs opposed the motion to dismiss and moved for summary judgment as to Count I. After considering the parties' briefs, the court presently addresses the District's motion to dismiss Count III, Count IV, and Wanda in her own right, but will not consider either parties' motion with respect to Count I until after the parties complete on-going settlement negotiations for that Count and, if necessary, after a settlement conference with Magistrate Judge Elizabeth Hey.

## II.     Discussion

### A.     Rule 12(b)(6) Standard

Generally, when deciding whether to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is testing the sufficiency of a complaint. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980) (citation omitted). The court must accept as true all well-pled allegations of fact in the complaint, and any reasonable inferences that may be drawn therefrom, to determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Nami*, 82 F.3d at 65. A plaintiff must show a "plausible" or "reasonably founded hope" of success, *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969, 1974 (2007) (internal citations and quotation marks omitted), although "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks and citation omitted). "The complaint will be deemed to have alleged sufficient facts if it adequately puts the defendants on notice of the essential elements of the plaintiff['s] cause of action." *Nami*, 82 F.3d at 65.

### B.     The District's motion to dismiss Count III:  plaintiffs' section 504 and ADA claims

Count III alleges violations of section 504 and of the ADA. The District contends that the Complaint fails to allege that the District discriminated against Tereance because of his disability. Because the Complaint properly alleges claims under section 504 and the ADA, the District's motion will be denied.

Section 504 prohibits discrimination against disabled persons by recipients of federal funding:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a). To establish a violation of section 504 in this case, plaintiffs must allege that (1) Tereance "is disabled as defined by the Act"; (2) Tereance "is 'otherwise' qualified to participate in school activities"; (3) the District "receives federal financial assistance"; and (4) Tereance "was excluded from participation in, denied the benefits of, or subject to discrimination at, the school." *See W.B. v. Matula*, 67 F.3d 484, 492 (3d Cir. 1995*), abrogated on other grounds by A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791 (3d Cir. 2007). Furthermore, under the fourth element, the District must know of or be reasonably expected to know of Tereance's disability. *See Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380-81 (3d Cir. 1991). Plaintiffs, however, "need not establish that there has been an intent to discriminate in order to prevail under § 504." *Matula*, 67 F.3d at 492 (quotation marks and citation omitted); *see also Nathanson*, 926 F.2d at 1384.

In this case, elements one through three are uncontested.[5] The District challenges only the fourth element because "[t]here is no allegation here that educational services or benefits were intentionally withheld from the minor plaintiff because of his disability, that he was

---

[5] The Complaint alleges that Tereance is disabled because of his autistic spectrum disorders and related disabilities. (Compl. ¶ 2.) The Complaint also alleges that, despite his disability, Tereance is otherwise qualified to participate in school activities. (Compl. ¶ 167.) Furthermore, the District concedes that it "receives federal financial assistance." (Def.'s Mot. Dismiss 6.)

9

excluded from any school programs or activities available to all students or that he was treated differently by School District officials because of his disability." (*Id.* at 6-7.) Despite the District's contention, the complaint alleges that "[t]he District's failure to provide [a] FAPE . . . discriminated against Tereance on the basis of his disabilities." (Compl. ¶ 169; *see also id.* ¶ 168 (alleging that the district failed to provide services for Tereance "to make appropriate developmental and education progress equal to that provided children without disabilities").)[6] More specifically, plaintiffs assert in their Complaint the following: (1) the District failed to provide Tereance with autistic and ESY services required to address his disability, which denied him an appropriate education, even after it suspected autistic spectrum disorders (*see* Compl. ¶¶ 2, 57, 74, 79, 81, 91, 111); (2) the District inappropriately treated Tereance's behavior as emotionally related, relegating him to inappropriate educational situations (*see id.* at ¶¶ 52-55, 73, 92, 96-98, 107, 109); (3) the District did not properly conduct the required evaluations of Tereance (*see id.* at ¶¶ 56, 62-63, 66, 91-93, 115-116, 128); and (4) the District told Wanda to get private psychiatric evaluation that the school should have performed to assess Tereance's educational needs (*see id.* at ¶¶ 71-72). Plaintiffs have sufficiently alleged facts which, if proven, show that the District excluded Tereance from participation in, denied him the benefits of, and subjected him to discrimination at school. Plaintiffs have thus made a prima facie case of the four elements required for a cause of action under section 504, and the court will deny the District's motion.

---

[6] Relying on *J.D. ex rel. J.D. v. Pawlet Sch. Dist.*, 224 F.3d 60, 71 (2d Cir. 2000), the District contends that section 504 requires only reasonable accommodations. The parties have not presented argument regarding the reasonableness of the District's accommodations, and in any event, such reasonableness is not relevant to the present motion to dismiss.

The court reaches the same conclusion for plaintiffs ADA claim.  Under the ADA, 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  The ADA thus "extends the nondiscrimination rule of [section 504] to services provided by any 'public entity' (without regard to whether the entity is a recipient of federal funds)."  *Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 279 (3d Cir. 1996).  Because "the remedies, procedures, and rights" under the ADA are the same as those under Section 504," *id.*, the allegations of the complaint discussed above sufficiently state a cause of action under the ADA.  As such, the Complaint adequately describes facts that, if true, entitle plaintiffs to relief  under section 504 and the ADA; therefore, the court will deny defendant's motion to dismiss Count III.

### C.    The District's motion to dismiss Count IV:  plaintiffs' section 1983 equal protection clause claims

Count IV alleges a violation of the rights secured by the Equal Protection Clause through a cause of action under § 1983.  The District claims that plaintiffs fail to allege treatment different from similarly situated individuals.  Because the Complaint sufficiently alleges a claim for discrimination under § 1983, the court will deny the District's motion.

In order to sufficiently plead a claim for a violation of the equal protection component of the Fourteenth Amendment under § 1983, plaintiffs must allege that Tereance "received different treatment from other similarly situated individuals or groups."  *See Brown v. Borough of Mahaffey*, 35 F.3d 846, 850 (3d Cir. 1994) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)); *Irene B. v. Phila. Acad. Charter Sch.*, No. 02-1716, 2003 U.S. Dist. LEXIS

11

3020, at *46-47 (E.D. Pa. Jan. 29, 2003); *Kevin M. v. Bristol Twp. Sch. Dist.*, No. 00-6030, 2002 U.S. Dist. LEXIS 22509, at *25-27 (E.D. Pa. Jan. 16, 2002).  In the disability context, the United States Supreme Court has held that discrimination is prohibited by the Equal Protection Clause, whereas accommodation for disabled individuals "comes from positive law and not through the Equal Protection Clause."  *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 368 (2001).

In this case, the Complaint states two plausible grounds on which the District discriminated against Tereance.  First, plaintiffs have alleged that the District's actions "were in furtherance of an official policy or ratification of systematic practices which . . . violate Tereance's well-established federal constitutional rights as well of [sic] the rights of other children with disabilities, and was in deliberate indifference of those rights."  (Compl. ¶ 174 (alleging that the "District . . . systematically failed to train its staff or to supervise its staff and contractors to prevent the deprivation of FAPE to Tereance and others like him"); *see also* Compl. ¶ 62 (alleging practice of assigning psychologist who was not competent to evaluate an autistic child); ¶ 150 (alleging failure to train an autistic support services teacher).)  Those policies, for example, caused Wanda to forego ESY offerings for Tereance despite their availability to other students.  (*Id.* at ¶ 150.)  Second, plaintiffs have alleged discrimination through the District's specific denial of the availability of autistic support services to Tereance.  (*Id.* at ¶¶ 168-69.)  More specifically, the Complaint states that "most of the students in Tereance's Autistic Support classroom at Nebinger were in that class during the time the District was telling Wanda D. that Tereance was too 'high functioning' for Autistic Support.  His other classmates had been attending Autistic Support classrooms in other parts of the City, none of which the District had identified in response to Wanda D.'s repeated pleas for Autistic Support

services for Tereance." (*Id.* at ¶ 146.) Either factual ground is sufficient to allege that the District discriminated against Tereance when compared to other similarly situated individuals, not just that it denied him accommodation without reference to its provisions for other individuals. These allegations are sufficient to survive the motion to dismiss. The court will thus deny the District's motion to dismiss as to Count IV.

### D. The District's motion to dismiss Wanda D. as a party in her own right

The case caption includes Wanda D. both as guardian of Tereance D. and in her own right. The District moves to dismiss Wanda as a plaintiff in her own right because she "has not alleged any specific violations of her own rights under IDEA, section 504, the ADA, or the Equal Protection Clause." (Def.'s Mot. Dismiss 9.) Under IDEA, a parent may be an aggrieved party with standing to assert both substantive and procedural rights. *See Winkelman ex rel. Winkelman v. Panama City Sch. Dist.*, 127 S. Ct. 1994, 2004 (2007) ("IDEA, through its text and structure, creates in parents an independent stake not only in the procedures and costs implicated by this process but also in the substantive decisions to be made. . . . As a consequence, a parent may be a 'party aggrieved' for purposes of § 1415(i)(2) with regard to 'any matter' implicating these rights."). Wanda concedes that she "has made no individual claims other than her right to a FAPE on Tereance's behalf." Under IDEA, however, she has the personal right to enforce a FAPE as the parent of Tereance; therefore, she does not need to allege the type of personal violation suggested by the District. The court will deny the District's motion to dismiss Wanda as a party in her own right.

13

**III.     Conclusion**

In sum, the court will deny defendant's motion to dismiss as to Counts III and IV. The court will also deny defendant's motion to dismiss Wanda D. as a party in her own right. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TEREANCE D., through his Guardian and next friend, WANDA D., and WANDA D. in her own right, Plaintiffs, v. SCHOOL DISTRICT OF PHILADELPHIA, Defendant. | : : : : : : : : : : | CIVIL ACTION NO. 07-4166 |

# Order

AND NOW on this _____ day of February 2008, upon careful consideration of defendant's motions to dismiss (Docket No. 8), plaintiffs' response thereto, and plaintiffs' motion for summary judgment as to Count I (Docket No. 12), IT IS HEREBY ORDERED that:

1. Defendant's motion to dismiss Counts III and IV and to dismiss Wanda D. as a plaintiff in her own right is DENIED.

2. Plaintiffs' motion for summary judgment is DENIED as premature.

　　　　　　　　　　　　　　　　　　　　　__s/ William H. Yohn Jr.___
　　　　　　　　　　　　　　　　　　　　　William H. Yohn Jr., Judge